**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **STREAM'S EDGE PROPERTIES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 17-cv-3584** |
| | ) | |
| **FIRST AMERICAN TITLE INSURANCE COMPANY,** | ) | **District Judge Ronald Guzman** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**FIRST AMERICAN TITLE INSURANCE
COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES**

First American Title Insurance Company ("First American"), for its answer and

affirmative defenses to the complaint, states as follows:

**Answer**

1.      The Crest Hill Industrial Park is located in City of Crest Hill, Will County.

**ANSWER:**  First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 1, and therefore denies the allegations.

\*                                 \*                                 \*

2.      The Crest Hill Industrial Park is a Planned Unit Development approved by the
City of Crest Hill.

**ANSWER:**  First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 2, and therefore denies the allegations.

\*                                 \*                                 \*

3.      The Crest Hill Industrial Park is zoned by the City of Crest Hill with an "M-1"
designation permitting industrial and manufacturing land uses.

**ANSWER:**  First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 3, and therefore denies the allegations.

JMW:K:fatic-sep.ansr.affdefs.060117

                    *                    *                    *

      4.      The City of Crest Hill City Council on or about March 4, 2003 approved the Final Plat of Crest Hill Industrial Park Planned Unit Development - Phase 1 (Phase 1 Plat).

      **ANSWER:**  First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4, and therefore denies the allegations.

                    *                    *                    *

      5.      The approved Phase 1 plat was recorded on or about December 17, 2003 as document number R2003304665 by the Will County Recorder of Deeds.

      **ANSWER:**  First American admits that the document attached to the complaint as Exhibit A is entitled "Final Plat of Crest Hill Industrial Park Planned Unit Development – Phase I" and that such document purports to have been recorded with the Will County Recorder on December 17, 2003, as document number of R2003304665.  Except as so admitted, First American denies the allegations of paragraph 5.

                    *                    *                    *

      6.      A true, correct and complete copy of the Phase I plat is attached as Exhibit A.

      **ANSWER:**  First American admits that the document attached to the complaint as Exhibit A is entitled "Final Plat of Crest Hill Industrial Park Planned Unit Development – Phase I."  Except as so admitted, First American denies the allegations of paragraph 6.

                    *                    *                    *

      7.      The Phase 1 plat shows the dedication of the roadway named "Enterprise Boulevard" to the City of Crest Hill.

      **ANSWER:**  First American admits that the document attached to the complaint as Exhibit A references "Enterprise Boulevard."  Except as so admitted, First American denies the allegations of paragraph 7.

JMW:K:fatic-sep.ansr.affdefs.060117

\*                              \*                              \*

8.      The Phase 1 plat shows the Enterprise Boulevard roadway as sixty-six feet in width and running north and south, beginning at the intersection with Division Street, an east and west arterial roadway along the northern boundary of the Crest Hill Industrial Park.

**ANSWER:**  First American admits that the document attached to the complaint as Exhibit A references "Enterprise Boulevard" and "Division Street" and that on such document the foregoing roadways are made to appear to intersect.  First American denies any allegations, characterizations, or written descriptions in paragraph 8 which are inconsistent with the actual markings, depictions, or descriptions on the document attached to the complaint as Exhibit A; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 8.

\*                              \*                              \*

9.      The Phase 1 plat shows the dedicated Enterprise Boulevard roadway depicted from the Division Street intersection south by continuous bold lines to a cul-de-sac, then continuing south as a marked "66' ROAD EASEMENT" depicted as dashed broken lines to a cul-de-sac above the southern boundary of the Crest Hill Industrial Park.

**ANSWER:**  First American admits that the document attached to the complaint as Exhibit A references "Enterprise Boulevard" and "Division Street" and that on such document the foregoing roadways are made to appear to intersect.  First American denies any allegations, characterizations, or written descriptions in paragraph 9 which are inconsistent with the actual markings, depictions, or descriptions on the document attached to the complaint as Exhibit A; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 9.

\*                              \*                              \*

10.     The Phase 1 plat shows platted Lot 2 immediately west of the Enterprise Boulevard roadway, with Lot 2 ingress and egress access provided solely by the Enterprise Boulevard roadway at the first and second cul-de-sacs shown.

**ANSWER:** First American admits that the document attached to the complaint as Exhibit A references "Enterprise Boulevard" and "Lot 2" and depicts a cul-de-sac. First American denies any allegations, characterizations, or written descriptions in paragraph 10 which are inconsistent with the actual markings, depictions, or descriptions on the document attached to the complaint as Exhibit A; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 10.

*         *         *

11.     On or about December 17, 2003 platted Lot 2 was sold, with ingress and egress rights benefiting Lot 2 created as the Phase 1 plat depicted the Enterprise Boulevard length, sixty six feet roadway width and cul-de-sacs appropriate for commercial vehicle traffic in this M-1 zoned planned unit development.

**ANSWER:** First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11, and therefore denies the allegations.

*         *         *

12.     The City of Crest Hill City Council on or about June 6, 2007 approved the Final Plat of Crest Hill Industrial Park Planned Unit Development - Phase 3 (Phase 3 Plat).

**ANSWER:** First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12, and therefore denies the allegations.

*         *         *

13.     The approved Phase 3 plat was recorded on or about June 8, 2007 as document number R2007087543 by the Will County Recorder of Deeds.

**ANSWER:** First American admits that the document attached to the complaint as Exhibit B purports to have been recorded with the Will County Recorder on June 8, 2007, as document number of R2007087543. Except as so admitted, First American denies the allegations of paragraph 13.

Page **4** of **23**

     *       *       *

14.  A true, correct and complete copy of the Phase 3 plat is attached as Exhibit B.

**ANSWER:** First American admits that the document attached to the complaint as

Exhibit B is entitled "Final Plat of Crest Hill Industrial Park Planned Unit Development – Phase

III." Except as so admitted, First American denies the allegations of paragraph 14.

     *       *       *

15.  The Phase 3 plat identically shows as did prior Phase 1 plat the dedicated
Enterprise Boulevard roadway depicted from the Division Street intersection south by
continuous bold lines to a cul-de-sac, then continuing south as a marked "66' ROAD
EASEMENT" depicted as dashed broken lines to a cul-de-sac above the southern boundary of the
Crest Hill Industrial Park.

**ANSWER:** First American admits that the document attached to the complaint as

Exhibit B references "Enterprise Boulevard" and "Division Street," references "66' ROAD

EASEMENT," and depicts a cul-de-sac. First American denies any allegations, characterizations,

or written descriptions in paragraph 15 which are inconsistent with the actual markings,

depictions, or descriptions on the document attached to the complaint as Exhibit A; and, except

as admitted in the first sentence of this answer, First American denies the allegations of

paragraph 15.

     *       *       *

16.  The surveyor's notes concerning the Enterprise Boulevard roadway found on the
Phase 3 plat refer back to the Enterprise Boulevard roadway dedication by prior Phase 1 plat
recording number as "DOC. R2003-304665" or at Phase III plat right margin as:

> 2.) ALL EASEMENTS SHOWN OUTSIDE THE LIMITS OF LOT 7
> ARE FROM CREST HILL INDUSTRIAL PARK PLANNED UNIT
> DEVELOPMENT PHASE I & II, OR RECORDED DOCUMENTS.

**ANSWER:** First American admits that the document attached to the complaint as

Exhibit B contains the words appearing in the block quote in paragraph 16. First American

denies any allegations, characterizations, or written descriptions in paragraph 16 which are

inconsistent with the actual markings, depictions, or descriptions on the plat; and, except as

admitted in the first sentence of this answer, First American denies the allegations of paragraph

16.

*          *          *

17.    The plaintiff STREAM'S EDGE PROPERTIES, LLC (SEP) before October 11, 2011 sought to buy land in the Crest Hill Industrial Park.

**ANSWER:**  First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 17, and therefore denies the allegations.

*          *          *

18.    A different surveyor than the surveyor who created the earlier Phase I and Phase III plats prepared a draft "Final Plat for the Crest Hill Industrial Park - Phase V" (Draft Phase V plat) dated October 10, 2011 attached as Exhibit C.

**ANSWER:**  First American admits that the surveyors identified on the documents

attached to the complaint as Exhibits A and B are "Claassen & Associates, P.C.," and that the

surveyor identified on the document attached to the complaint as Exhibit C is "Jacob & Hefner

Associates, Inc."  Except as so admitted, First American denies the allegations of paragraph 18.

*          *          *

19.    The Draft Phase V plat included platted Lot 11 which SEP had an interest in purchasing, with adjacent platted Lot 10 to the north and Lot 12 to the south also shown.

**ANSWER:**  First American admits that the document attached to the complaint as

Exhibit C references lots 10, 11, and 12.  First American denies any allegations,

characterizations, or written descriptions in paragraph 19 which are inconsistent with the actual

markings, depictions, or descriptions on the plat; and, except as admitted in the first sentence of

this answer, First American denies the allegations of paragraph 19.

Page **6** of **23**

&ast; &ast; &ast;

20.     The Draft Phase V plat consistent with the earlier Phase 3 plat made reference to the Enterprise Boulevard dedication as well as the "66' ROAD EASEMENT" when referring back to the Phase I plat by its R2003304665 document recording number and depicted both roadway segments in the same manner as in the previous Phase I and Phase III plats recorded.

**ANSWER:**  First American admits that the document attached to the complaint as

Exhibit C is entitled "Final Plat of Crest Hill Industrial Park Planned Unit Development – Phase

V."  First American denies any allegations, characterizations, or written descriptions in

paragraph 20 which are inconsistent with the actual markings, depictions, or descriptions on the

plat; and, except as admitted in the first sentence of this answer, First American denies the

allegations of paragraph 20.

&ast; &ast; &ast;

21.     SEP after October 10, 2011 agreed to purchase a larger acreage which encompassed the area depicted on the Draft Phase V plat as platted Lot 11 and Lot 12 to the south.

**ANSWER:**  First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 21, and therefore denies the allegations.

&ast; &ast; &ast;

22.     The surveyor thereafter prepared a revised "Final Plat for the Crest Hill Industrial Park - Phase V" also dated October 10, 2011 which relabeled the platted Lot 11 and Lot 12 shown on the Draft Phase V plat as a much larger platted Lot 11 of approximately 43 acres but in error deleted the eastern thirty three feet from the "66' ROAD EASEMENT".

**ANSWER:**  First American admits that the document attached to the complaint as

Exhibit D is entitled "Final Plat of Crest Hill Industrial Park Planned Unit Development – Phase

V."  First American denies any allegations, characterizations, or written descriptions in

paragraph 22 which are inconsistent with the actual markings, depictions, or descriptions on the

plat; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 22.

*            *            *

23.     First American in the review process of public record title recordings before making a title insurance commitment beginning in December 2011 continuing through February 2012 and despite having a copy of the revised "Final Plat for the Crest Hill Industrial Park - Phase V" which referred back to the Phase I plat by document number R2003304665, did not identify the "66' ROAD EASEMENT" as an municipal easement nor claim of easement found in the public record.

**ANSWER:**  First American denies the allegations in paragraph 23.

*             *            *

24.     The City of Crest Hill City Council on or about January 3, 2012 approved the Final Plat of Crest Hill Industrial Park Planned Unit Development - Phase V (Phase 5 Plat) with the erroneously deleted eastern thirty three feet from the "66' ROAD EASEMENT" found in the public record.

**ANSWER:**  First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first paragraph 24, and therefore denies the allegations.

*             *            *

24.     A mutual mistake existed on and before January 3, 2012 by the surveyor who prepared the Phase V plat submitted for municipal approval as well as by the City of Crest Hill Plan Commission and City Council members who were misled the eastern thirty three feet from the "66' ROAD EASEMENT" did not exist by the submitted Phase V plat.

**ANSWER:**  First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second paragraph 24, and therefore denies the allegations.

*             *            *

25.     At no time did the purchaser of Lot 2 provide a written relinquishment of the ingress and egress rights benefiting Lot 2 created as the Phase 1 plat depicted the Enterprise

Page **8** of 23

Boulevard length, sixty six feet roadway width and cul-de-sacs appropriate for commercial vehicle traffic in this M-1 zoned planned unit development.

**ANSWER:** First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25, and therefore denies the allegations.

\*                              \*                              \*

26.    The erroneous Phase 5 plat was recorded on or about January 19, 2012 as document number R2012007742 by the Will County Recorder of Deeds.

**ANSWER:** First American admits that the document attached to the complaint as Exhibit D is entitled "Final Plat of Crest Hill Industrial Park Planned Unit Development – Phase V" and that such document purports to have been recorded with the Will County Recorder on January 19, 2012, as document number of R2012007742. First American denies any allegations, characterizations, or written descriptions in paragraph 26 which are inconsistent with the actual markings, depictions, or descriptions on the plat; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 26.

\*                              \*                              \*

27.    A true, correct and complete copy of the erroneous Phase V plat is attached as Exhibit D.

**ANSWER:** First American admits that the document attached to the complaint as Exhibit D is entitled "Final Plat of Crest Hill Industrial Park Planned Unit Development – Phase V."  Except as so admitted, First American denies the allegations of paragraph 27.

\*                              \*                              \*

28.    First American provided SEP with a title insurance commitment for platted Lot 11 in the recorded Phase V plat dated December 26, 2011 and as revised December 28, 2011 and January 5, 2012 as well as provided a title policy pro forma to SEP thereafter, all which did not include the "66' ROAD EASEMENT" as a Schedule B exception to title insurance.

**ANSWER:** First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28, and therefore denies the allegations.

*           *           *

29.    First American thereafter issued to SEP as a first party "Insured" an Owner's Policy of Title Insurance, Policy No. 2124943 dated February 28, 2012 in the amount of $5,200,000.00 (5.2 million) which did not include the "66' ROAD EASEMENT" as a Schedule B exception.

**ANSWER:** First American admits that the document attached to the complaint as Exhibit E is entitled Owner's Policy of Title Insurance, bears policy no. 2124943, and states that it is issued by First American Title Insurance Company. First American denies any allegations, characterizations, or written descriptions in paragraph 29 which are inconsistent with the actual terms of the document; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 29.

*           *           *

30.    On or about February 28, 2012 SEP closed on the Lot 11 purchase for the construction of a truck terminal.

**ANSWER:** First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30, and therefore denies the allegations.

*           *           *

31.    By or sometime before August 2012 SEP received building permits from the City of Crest Hill for the Lot 11 truck terminal improvement construction.

**ANSWER:** First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, and therefore denies the allegations.

*           *           *

32.    By September 2012 SEP's construction contractors had substantially completed underground water supply and sanitary sewer connections for the Lot 11 truck terminal

improvement running within the eastern thirty three feet width of the preexisting "66' ROAD EASEMENT."

**ANSWER:** First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 32, and therefore denies the allegations.

                    *                              *                              *

33.     On or about September 19, 2012 Crest Hill municipal staff inspecting SEP's substantially completed water supply and sanitary sewer connections underground construction required substantial changes in engineering and revised construction of the water supply and sanitary sewer connections serving Lot 11 to accommodate the preexisting"66' ROAD EASEMENT" granted to the City of Crest Hill and suitable for the planned future roadway used by heavy commercial vehicle traffic.

**ANSWER:** First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 33, and therefore denies the allegations.

                    *                              *                              *

34.     SEP made the requested changes which cost SEP $564,057.21 in additional engineering and underground construction change orders to accommodate the preexisting"66' ROAD EASEMENT" granted to the City of Crest Hill in the public record.

**ANSWER:** First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 34, and therefore denies the allegations.

                    *                              *                              *

## COUNT I

1. - 34. SEP adopts paragraphs 1 through 34 of FACTS COMMON TO ALL CLAIMS as and for paragraphs 1 through 34 of Count I.

**ANSWER:** First American realleges its answers to paragraphs 1 through 34 above as its

answers to paragraphs 1 through 34 of this Count I.

                    *                              *                              *

35.     SEP is a limited liability company headquartered in Dayton, Ohio.

JMW:K:fatic-sep.ansr.affdefs.060117

**ANSWER:**  First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 35, and therefore denies the allegations.

\*                              \*                              \*

36.     SEP on or about February 28, 2012 purchased Crest Hill Industrial Park platted Lot 11 located within the City of Crest Hill, Will County, Illinois.

**ANSWER:**  First American is without knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 36, and therefore denies the allegations.

\*                              \*                              \*

37.     The Defendant FIRST AMERICAN TITLE INSURANCE COMPANY (First American) is a Nebraska foreign corporation registered with the Illinois Secretary of State and doing business throughout the State of Illinois including Will County.

**ANSWER:**  First American admits the allegations in paragraph 37.

\*                              \*                              \*

38.     First American on or before February 28, 2012 offered to indemnify SEP from Lot 11 land title defects and impairments in the form of a written Owner's Policy of Title Insurance to the amount of $5,200,000.00 (5.2 million).

**ANSWER:**  First American admits that the document attached to the complaint as

Exhibit E is entitled Owner's Policy of Title Insurance, bears policy no. 2124943, and states that

it is issued by First American Title Insurance Company.  First American denies any allegations,

characterizations, or written descriptions in paragraph 38 which are inconsistent with the actual

terms of the document; and, except as admitted in the first sentence of this answer, First

American denies the allegations of paragraph 38.

\*                              \*                              \*

39.     First American as consideration for this offer would receive an agreed premium amount paid to First American by the seller of Lot 11.

**ANSWER:**  First American admits the allegations in paragraph 39.

        *              *              *

40.      SEP in response to this offer sought additional indemnity protection in the form of extended coverage endorsements, among which deleted Owner's Policy of Title Insurance, Schedule B Standard Exceptions numbered 1 through 6 for an additional premium paid to First American by SEP

**ANSWER:** First American admits that the document attached to the complaint as Exhibit E is entitled Owner's Policy of Title Insurance, bears policy no. 2124943, and states that it is issued by First American Title Insurance Company. First American denies any allegations, characterizations, or written descriptions in paragraph 40 which are inconsistent with the actual terms of the document; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 40.

           *              *              *

41.     First American on or about February 28, 2012 accepted SEP's offer made when issuing to SEP as First American's first party "Insured" an Owner's Policy of Title Insurance, Policy No. 2124943 dated February 28, 2012 in the amount of $5,200,000.00 (5.2 million) with extended coverage endorsements "Restrictions, Encroachments & Minerals - Improved Land, Owner" and also deleting the Schedule B Standard Endorsements 1 through 6.

**ANSWER:** First American admits that the document attached to the complaint as Exhibit E is entitled Owner's Policy of Title Insurance, bears policy no. 2124943, and states that it is issued by First American Title Insurance Company. First American denies any allegations, characterizations, or written descriptions in paragraph 41 which are inconsistent with the actual terms of the document; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 41.

           *              *              *

42.     A true and correct copy of First American's Owner's Policy of Title Insurance, Policy No. 2124943 dated February 28, 2012 in the amount of $5,200,000.00 (5.2 million) with extended coverage endorsements issued to SEP is attached as Exhibit E.

**ANSWER:**  First American admits that the document attached to the complaint as Exhibit E is entitled Owner's Policy of Title Insurance, bears policy no. 2124943, and states that it is issued by First American Title Insurance Company.  First American denies any allegations, characterizations, or written descriptions in paragraph 42 which are inconsistent with the actual terms of the document; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 42.

*          *          *

43.     First American received payment of the agreed upon consideration for the Exhibit E policy as part of the Lot 11 land sale closing transaction.

**ANSWER:**  First American admits the allegations in paragraph 43.

*          *          *

44.     On January 14, 2013 SEP made a written title policy claim via certified mail to First American at the address in Santa Ana, California required by policy CONDITION 18 which sought indemnity for the extra costs of engineering and construction change orders which SEP paid because of the preexisting"66' ROAD EASEMENT" granted to the City of Crest Hill and suitable for the planned future roadway used by heavy commercial vehicle traffic.

**ANSWER:**  First American admits that SEP made a written title policy claim to First American on or about January 14, 2013, seeking indemnity under the terms of its policy.  First American denies that SEP is entitled to the indemnity coverage sought under its title policy claim; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 44.

*          *          *

45.     SEP had the right to receive and First American Title owed a duty to pay title policy indemnity because SEP's claim is based upon the preexisting"66' ROAD EASEMENT" granted to the City of Crest Hill in the public record which met:

COVERED RISK 2. "Any defect in or lien or encumbrance on the Title.";

Page **14** of **23**

COVERED RISK 2(c) "Any encroachment, encumbrance, violation, variation or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land."; and

COVERED RISK 8. "Any taking by a governmental body that has occurred or is binding upon on the rights of a purchaser for value without Knowledge."

**ANSWER:**  First American denies the allegations in paragraph 45, and further denies

SEP's characterizations of its entitlement to indemnity coverage under the policy as set forth in

paragraph 45.

*     *     *

46.     First American by a claims attorney employee first denied SEP's claim with a letter dated July 28, 2014 on the written grounds the preexisting "66' ROAD EASEMENT" granted to the City of Crest Hill in the Phase I and Phase III plats recorded did not exist and the City of Crest Hill demanded an easement be created and did so after the February 28, 2012 title policy inception date.

**ANSWER:**  First American admits that, based upon its preliminary investigation, it

issued a letter dated July 28, 2014, denying SEP's claim for reimbursement.  First American

denies any allegations or characterizations in paragraph 46 which are inconsistent with the actual

contents of the July 28, 2014, letter; and, except as admitted in the first sentence of this answer,

First American denies the allegations of paragraph 46.

*     *     *

47.     SEP on December 21, 2015 filed suit in the Will County Circuit Court docketed 2015L000901 against the surveyor and employing firm alleging professional liability in the preparation of the erroneously revised Phase V plat recorded to protect First American's various contract rights including subrogation set forth in the Exhibit A policy CONDITIONS paragraph 5 through 7 by preventing the applicable 735 ILCS 5/13-222 four year limitations period from expiring.

**ANSWER:**  First American admits that SEP filed a lawsuit in the Will County Circuit

Court, docketed as case no. 2015L000901, against a surveyor and the employing firm. First

American is without knowledge or information sufficient to form a belief as to the truth of the

Page **15** of 23

remaining allegations in paragraph 47 concerning SEP's stated intentions in filing said lawsuit as they relate to the policy at issue in this matter, the parties' respective rights and obligations thereunder, and/or the claims now asserted against First American, and therefore denies such allegations; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 47.

*       *       *

48.     The defendants after process service removed the case to United States District Court for the Northern District of Illinois Eastern Division docketed as 16 C 00842.

**ANSWER:** First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48, and therefore denies the allegations.

*       *       *

49.     SEP sent subsequent letters dated July 12, 2015, December 29, 2015 and July 11, 2016 to First American's outside coverage counsel making further written showings based upon Illinois common law why SEP made a proper claim and First America's first and continuing claim denials were made in error.

**ANSWER:** First American admits that it received letters dated July 12, 2015, December 29, 2015, and July 11, 2016, from SEP regarding First American's denial of SEP's claim. First American denies any allegations or characterizations in paragraph 49 which are inconsistent with the actual contents of the letters; First American denies that SEP's claim is valid under the terms of the policy at issue and/or Illinois law; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 49.

*       *       *

50.     First American maintained its claim denial in reply letters despite of SEP's repeated requests for claim reconsideration and showing why SEP's claim for indemnity should be paid.

**ANSWER:** First American admits that it has maintained its denial of SEP's claim after SEP's requests for reconsideration. First American denies SEP's indemnity claim is valid and/or should be paid; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 50.

\*     \*     \*

51. SEP on July 16, 2016 gave First American written notice of the pending federal district court action against the surveyor and the employing firm pursuant to Exhibit E policy CONDITIONS paragraphs 3, 5 through 7.

**ANSWER:** First American admits that SEP provided written notice of SEP's federal district court action against a surveyor and the employing firm. First American is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 51 concerning SEP's stated intentions in notifying First American of said lawsuit as they relate to the policy at issue in this matter, the parties' respective rights and obligations thereunder, and/or the claims now asserted against First American, and therefore denies such allegations. Except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 51.

\*     \*     \*

52. SEP on October 19, 2016 gave First American written notice of an election First American needed to make to preserve its subrogation rights by taking over the prosecution of the pending federal district court action against the surveyor and the employing firm pursuant to Exhibit E policy CONDITIONS paragraph 7.

**ANSWER:** First American admits that SEP provided First American with a written notice of its right of subrogation under the policy at issue with regard to the lawsuit filed by SEP against a surveyor and the employing firm. First American denies any remaining allegations or characterizations in paragraph 52 that suggest First American waived any of its subrogation

rights under the terms of the policy at issue and/or Illinois law. Except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 52.

\*                                    \*                                    \*

53.     First American on November 4, 2016 gave SEP written notice declining to taking over the prosecution of the pending federal district court action against the surveyor and employing firm without making any offer to settle SEP's title policy indemnity claim.

**ANSWER:** First American admits that by letter dated November 4, 2016, it declined to take over SEP's surveyor professional liability action and that such letter did not include an offer to settle SEP's claim. First American denies any remaining allegations or characterizations in paragraph 53 which are inconsistent with the actual contents of the letter; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 53.

\*                                    \*                                    \*

54.     SEP paid $45,419.25 attorney fees and litigation costs to preserve First American's contract rights in the prosecution of the federal district court action against the surveyor and employing firm to a stipulated dismissal of this action on December 13, 2016.

**ANSWER:** First American is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54, and therefore denies the allegations.

\*                                    \*                                    \*

55.     First American on and after July 28, 2014 breached SEP's Exhibit E contract and its duty to pay SEP's title indemnity claim.

**ANSWER:** First American denies the allegations in paragraph 55.

\*                                    \*                                    \*

56.     As a direct and proximate result of First American's breach on and after July 28, 2014, SEP was denied its $564,057.21 title policy indemnity payment and paid $45,419.25 for attorney fees and litigation costs to preserve First American's title policy contract rights in the prosecution of the federal district court action against the surveyor and employing firm which SEP would not have otherwise filed if First American had timely paid its January 14, 2013 indemnity claim made.

Page **18** of **23**

**ANSWER:** First American denies the allegations in paragraph 56.

\*          \*          \*

57.      SEP seeks five percent (5%) per annum statutory prejudgment interest allowed by 815 ILCS 205/2 for First American's refusal to pay SEP's title policy indemnity claim on and after July 28, 2014.

**ANSWER:** First American admits that in the complaint SEP seeks relief in the form of an award of damages and statutory prejudgment interest. First American denies that SEP is entitled to any relief; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 57.

\*          \*          \*

WHEREFORE, First American Title Insurance Company prays that the Court enter judgment in its favor and against plaintiff Stream's Edge Properties, LLC, and that the Court award such other and further relief as is equitable and just.

\*          \*          \*

## COUNT II

1.-34.   SEP adopts paragraphs 1 through 34 of FACTS COMMON TO ALL CLAIMS as and for paragraphs 1 through 34 of Count II.

**ANSWER:** First American realleges its answers to paragraphs 1 through 34 above as its answers to paragraphs 1 through 34 of this Count II.

\*          \*          \*

35.-57.   SEP adopts COUNT I. - BREACH OF CONTRACT paragraphs 35 through 57 as and for paragraphs 35 through 57 of Count II - 215 ILCS 5/155 CLAIM.

**ANSWER:** First American realleges its answers to paragraphs 35 through 57 above as its answers to paragraphs 35 through 57 of this Count II..

\*          \*          \*

58.     At all times relevant, a certain statute existed in the Illinois Insurance Code at 215 ILCS 5/154.6 which defined various acts constituting improper claims practices.

**ANSWER:**  First American admits that 215 ILCS 5/154.6 was in existence at all times material.  First American denies any allegations or characterizations in paragraph 58 which are inconsistent with the actual provisions and/or intent of the statute; First American denies that SEP is entitled to any relief under the statute; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 58.

*   *   *

59.     At all times relevant, a certain stature existed in the Illinois Insurance Code at 215 ILCS 5/155 as follows:

(1)  In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

  (a)  60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

  (b)  $60,000;

  (c)  the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

**ANSWER:**  First American admits that SEP has quoted from a part of 215 ILCS 5/155. First American denies any allegations or characterizations in paragraph 59 which are inconsistent with the actual provisions and/or intent of the statute; First American denies that SEP is entitled to any relief under the statute; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 59.

*   *   *

60.     First American violated these statutes when vexatiously and unreasonably refusing to pay SEP's title policy indemnity claim on and after July 28, 2014 despite SEP's showing in claim denial reconsideration letters dated July 12, 2015, December 29, 2015 and July 11, 2016 why SEP presented to First American valid and well-supported bases in law and fact for paying its title policy indemnity claim.

**ANSWER:**  First American denies the allegations in paragraph 60.

*                              *                              *

61.     SEP for First American's violation of these statutes seeks reasonable attorney fees and litigation costs associated with this action plus $60,000.00 or 60% of the amount which the court or jury finds SEP is entitled to recover against the company, exclusive of all costs.

**ANSWER:**  First American admits that in the complaint SEP seeks relief in the form of an award of attorneys' fees and litigation costs.  First American denies that it has violated the Illinois Insurance Code; First American denies that SEP is entitled to any relief; and, except as admitted in the first sentence of this answer, First American denies the allegations of paragraph 61.

*                              *                              *

WHEREFORE, First American Title Insurance Company prays that the Court enter judgment in its favor and against plaintiff Stream's Edge Properties, LLC, and that the Court award such other and further relief as is equitable and just.

*                              *                              *

## Affirmative Defenses

1.     SEP's complaint fails to state a claim upon which relief may be granted.

2.     SEP's claims are barred by the doctrines of waiver, estoppel, and/or laches.

3.     SEP's claims are barred by the doctrines of ratification and/or acquiescence.

4.     SEP's claims are barred in whole or in part to the extent that SEP has failed to mitigate, minimize, or otherwise avoid its alleged damages.

5.      SEP's claims are barred in whole or in part to the extent that SEP breached its duty to timely disclose certain facts and/or cooperate as required under the terms of the policy at issue.

6.      SEP is barred from obtaining any of the relief requested based upon the doctrine of unclean hands.

7.      SEP is barred from obtaining any of the relief requested based upon the doctrine of *in pari delicto*.

8.      SEP has not sustained a compensable loss under the Policy.

9.      The claims set forth in the complaint are barred in whole or in part because SEP's alleged losses were caused by risks or matters that were excluded from coverage, not insured against under the Policy, or otherwise assumed by SEP.

10.      The claims set forth in the complaint are barred in whole or in part to the extent of any payments made to SEP.

11.      SEP claims are barred by its actual or constructive knowledge.

12.      The claims set forth in the complaint are barred in whole or in part to the extent that SEP's alleged losses, if any, were caused by SEP's actions or inactions, or the actions or inactions of persons or entities other than First American.

13.      The claims set forth in the complaint are barred in whole or in part to the extent that SEP's alleged damages were not caused proximately by First American's actions or inactions.

14.      First American reserves the right to assert further affirmative defenses that may become known during the course of discovery.

WHEREFORE, First American Title Insurance Company prays that the Court enter judgment in its favor and against plaintiff Stream's Edge Properties, LLC, and that the Court grant such other and further relief as is equitable and just.

**FIRST AMERICAN TITLE
INSURANCE COMPANY**

By:    /s/ J. Michael Williams     
       One of Its Attorneys

J. Michael Williams (mwilliams@cohonraizes.com)
Carrie A. Dolan (cdolan@cohonraizes.com)
Scott M. Kaplan (skaplan@cohonraizes.com)
Cohon Raizes & Regal LLP (90192)
208 South LaSalle Street, Suite 1440
Chicago, Illinois 60604-1261
Phone: (312) 726-2252
Fax: (312) 726-0609

Date: June 1, 2017

JMW:K:fatic-sep.ansr.affdefs.060117